**YING JING GAN, as administratrix of the Estate of Sen Van Ta, deceased, Ying Jing Gan, for herself as the wife and widow of the deceased, and, Jason Ta, child of the union of Ying Jing Gan and Sen Van Ta, Plaintiffs–Appellees–Cross–Appellants,**

v.

**The CITY OF NEW YORK, a municipal entity, State of New York, County of New York, governmental entities, Deputy Chief Joseph N. DeMartino, Detective Henry Murray, New York City Police Officers, Defendants,**

**Luke Rettler, Assistant District Attorney, County of New York, Defendant–Appellant,**

**Robert M. Morgenthau, District Attorney, New York County, Defendant–Cross–Appellee.**

**Nos. 947, 1043, Dockets 92–7971, 92–7993.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1993.

Decided June 1, 1993.

James I. Meyerson, New York City (Adele Graham, New York City, on the brief), for plaintiffs-appellees-cross-appellants.

David J. Mudd, Asst. Dist. Atty., New York County, New York City (Robert M. Morgenthau, Dist. Atty., New York County, James M. McGuire, Asst. Dist. Atty., on the brief), for defendant-appellant and defendant-cross-appellee.

Before: VAN GRAAFEILAND, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Luke Rettler, an Assistant District Attorney in New York County, appeals from so much of an order of the United States District Court for the Southern District of New York, Mary Johnson Lowe, *Judge,* as denied his motion for dismissal, on grounds of immunity or failure to state a claim, of plaintiffs' claims that Rettler failed to provide adequate protection to a complaining witness and that that failure resulted in the witness's death. Plaintiffs cross-appeal from so much of the order as dismissed their similar claims against defendant Robert M. Morgenthau, District Attorney for New York County, for failure to state a claim on which relief can be granted. We conclude that for various reasons Rettler was entitled to dismissal of the claims against him. We also affirm so much of the district court order as dismissed the claims against Morgenthau.

## I. BACKGROUND

Plaintiffs Ying Jing Gan and Jason Ta are, respectively, the widow and son of Sen Van Ta ("Ta") who, until his death in March 1991, was the manager and part owner of the Golden Star Jewelry Store on Canal Street in the Chinatown section of New York City. Most of the events are undisputed.

### A. *The Events*

On January 21, 1991, the Golden Star Jewelry Store was robbed by a group of young men. After the police were contacted, store employees identified the robbers, who were members of an organized crime gang known as Born To Kill ("BTK"). Thereafter, on February 7, 1991, Ta received an envelope addressed to the store, containing broken glass and a newspaper clipping describing the arrests. Ta viewed the contents as a serious threat and contacted the police.

On February 11, Ta was visited at the store by a man who told him to go to court and say that the men arrested were not the ones who had robbed the store. Ta reported this incident to the police, and on February 18 he identified the man from photographs as David Thai; Thai was reputedly the leader of BTK. In the meantime, on February 13, several members of BTK visited the store and unsuccessfully attempted to extort money from Ta. Ta promptly contacted the police, and he accompanied officers to a shopping center in Chinatown, where he made face-to-face identifications of two of the men who had just visited his store.

On March 10, 1991, Ta went with his pregnant wife to a store on Broadway. He was there shot and killed by an alleged member of BTK. Some six months later, Thai and several other alleged BTK members were indicted for numerous crimes, including the murder of Ta.

### B. *The Present Lawsuit and the Decision Below*

In July 1991, plaintiffs commenced the present action asserting claims principally under 42 U.S.C. § 1983 (1988) against Rettler, Morgenthau, New York City police officers Henry Murray and Joseph N. DeMartino, and the City, County, and State of New York, alleging chiefly that defendants had failed to provide Ta with adequate protection, in violation of Ta's due process rights under the Fourteenth Amendment to the Constitution. The complaint requests a total of $20 million in compensatory and punitive damages, as well as declaratory and injunctive relief "if ... appropriate," and costs and attorneys' fees.

Plaintiffs allege that Ta had a special relationship with defendants; that the compulsion of Ta by defendants "or some thereof" (Complaint ¶ 24) to make the February 13 face-to-face identifications of men who had

just threatened Ta exposed him to an unreasonable risk of retaliation; and that compulsion and defendants' failure to protect Ta constituted a deliberate and reckless disregard of his constitutional rights. As it relates to Morgenthau and Rettler, the complaint alleges that the prosecutors violated Ta's constitutional rights by advising the police officers not to arrest Thai following Ta's identification of him:

> It is believed that personnel in the District Attorney's Office of New York County, pursuant to the practice, custom, policy and particular direction of Robert Morganthau [sic], counseled the New York City Police Department and employees thereof, for the City of New York, not to make an arrest of Thai although Ta had specifically identified him as having made a threat to him because of Ta's prior cooperation with law enforcement personnel about the robbery. Said threat, as described, was a felony crime subjecting the individual— Thai, to arrest for the commission of a crime: threat and intimidation of a witness to a crime....

(Complaint ¶ 31.) It alleges that defendants' actions were

> per a policy, practice and custom of the New York City Police Department and/or in consultation with Defendant District Attorney and the Defendant Assistant[ ] District Attorney and per the policy, practice and custom of the Office of the District Attorney which elevated on going [sic] investigations to a higher concern and level than to the protection of the rights and life of persons with whom law enforcement was working in the context of the investigations and without whom the investigations, to which the highest concern attached, could not take place and would not be effective.

(Complaint ¶ 34.)

All defendants moved for dismissal of the complaint pursuant to, *inter alia*, Fed. R.Civ.P. 12(b)(6) for failure to state a claim on which relief could be granted or, in the alternative, for summary judgment in their favor pursuant to Fed.R.Civ.P. 56(b) on grounds of absolute, qualified, or Eleventh Amendment immunity. The court eventually granted the motions of Morgenthau and the State and denied the motions of the municipal and other individual defendants; only the motions of Morgenthau and Rettler are pertinent to the present appeals.

In support of his motion for summary judgment, Rettler, who was a Bureau Chief in charge of the Asian Gang Unit, submitted an affidavit stating that he had not participated in any pretrial identification procedures involving Ta. He also stated that he had "never 'counselled' the police not to arrest Thai." (Affidavit of Assistant District Attorney Luke Rettler, dated September 10, 1991 ("Rettler Affidavit"), ¶ 7.) Rather, he informed the officers that with respect to Ta's report that Thai told him to testify that the men arrested were not the ones who had robbed the store, Thai could be charged only with witness tampering in violation of N.Y. Penal Law § 215.10, a misdemeanor charge that would not support his prolonged detention pending its disposition. Rettler also stated that he personally explained this to Ta and asked whether in the circumstances Ta wanted Thai arrested, and that Ta responded that he did not:

> 5. On or about February 19, 1991, I informed Detective Henry Murray of the New York Police Department that probable cause existed to arrest Thai for, at best, the crime of Tampering With a Witness in the Fourth Degree (New York Penal Law § 215.10). However, I informed Detective Murray that, given that that crime was a misdemeanor, our office would not be able to obtain pretrial bail conditions sufficient to keep Thai incarcerated pending his criminal prosecution. I also informed Detective Murray that Thai, if he were arrested, might retaliate against Ta in some way. I therefore suggested to Detective Murray that he apprise Ta of this information and then ask Ta if he wanted the police to arrest Thai.
>
> 6. On or about February 19–20, 1991, I personally spoke with Mr. Ta at the Golden Star Jewelry Store. During my conversation with Mr. Ta, I told him that the police would attempt to arrest Thai if Mr. Ta so desired, but that our office would not be able to obtain pretrial bail conditions

that would be sufficient to keep Thai incarcerated pending his criminal prosecution. I asked Mr. Ta if he was satisfied with the police protection that he was receiving; Mr. Ta answered that he was. I also asked Mr. Ta if he wanted the police to arrest Thai; Mr. Ta answered that he did not.

(Rettler Affidavit ¶¶ 5, 6.) Rettler also submitted a March 2, 1991 police report filed by Murray that supported the Rettler Affidavit's account of these events:

I have informed Mr. Ta of my conversations with ADA Rettler of the Asian Gang Unit who has stated that allthough [sic] probable cause exist[s] to arrest David Thai[ ], the District Attorneys [sic] office will be unable to keep David Thai incarcerated and that this situation may exasperate gang members. I have advised Mr. Ta that the decision to have David Thai arrested is his and that if he feels the need for additional police protection at either his home or business it will be provised [sic]. Sen Ta has informed me that at this time he does not wish to have David Thai arrested but if any further threats are received he will review this decision. Sen Ta has further advised me that he does not wish any police protection at his residence and that he feels the attention being provided at his place of business by the 001 Precinct has been more than adequate.

(Complaint Follow–Up Report prepared by Detective Henry Murray, dated March 2, 1991.)

In opposition to the summary judgment motions, plaintiffs submitted affidavits of Gan and of Ta's business partner. Gan stated that Ta told her of the robbery, of receiving the broken glass, of the extortionate visit on February 13, and of the face-to-face identifications he had made on that day. He told her he was frightened by the events, and he told her he had asked the police for help, which she interpreted to include protection. Gan also stated that Ta told her he felt he had no choice but to attempt a face-to-face identification of the would-be extortionists on February 13 because he was afraid the police would accuse him of being uncooperative. She stated that "[a]fter my husband in-

formed me that he went and identified the people who robbed the store, he told me that the police indicated to him that they would protect him." (Affidavit of Ying Jing Gan, dated October 22, 1991, ¶ 27.) Haivan Tran, Ta's business partner, submitted an affidavit expressing Tran's own concern and anger that Ta had been asked to make a face-to-face identification. He said Ta told him that Ta had had no choice and had gone because the police directed him to do so; but Tran also stated that when Ta told him about it,

Ta was boasting of sorts about the fact that people were begging him not to identify him to the police who were with him at the time. Ta said to me that he did not feel threatened because he had the police with him and that they protected him. Ta was very proud of himself. . . .

(Affidavit of Haivan Tran, dated October 22, 1991, ¶ 26.) Neither of these affidavits stated that Rettler had been involved in Ta's face-to-face identifications on February 13, or that Ta had asked the police to arrest Thai on the basis of the February 11 tampering, or that Ta had asked the police for more protection than he was receiving, or that Ta had told the affiants he believed that the protection he was receiving was inadequate.

In an Opinion and Order dated August 18, 1992 ("District Court Opinion"), the district court, to the extent pertinent here, granted Morgenthau's motion to dismiss but denied the motion of Rettler. The court pointed out that the complaint did not clearly specify whether Morgenthau and Rettler were being sued in their individual or official capacities. Noting that in such circumstances the inference as to the targeted capacity is normally to be drawn from the course of the proceedings, the court found, based on its review of the claims before it, that Morgenthau and Rettler were being sued only in their official capacities. The court dismissed the action as to Morgenthau, ruling that plaintiffs had "failed to allege that Morgenthau, acting in his official-capacity and under color of state law, deprived plaintiffs' decedent of a right guaranteed by the Constitution or laws of the United States." District Court Opinion at 7.

The court rejected Rettler's contention that he was entitled to immunity by reason of

his prosecutorial position, stating, in pertinent part, as follows:

> Morgenthau and Rettler claim that the 11th Amendment grants them absolute immunity from civil suit for actions taken in their official-capacities as agents of the state. The decision to grant or deny absolute immunity depends more, however, on the function being performed than on the office of the defendant, and the absolute immunity accorded to Morgenthau and Rettler will extend only as far as is necessary to the effective functioning of the judicial process. *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990) (citing *Robi[ ]son v. Via,* 821 F.2d 913, 918 (2d Cir.19[87)]). The test is whether Morgenthau and Rettler engaged in activities that are "intimately associated with the judicial phase of the criminal process." *Id.* (citing *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976)).
>
> . . . .
>
> With regard to defendant Rettler, plaintiffs claim that by giving "counsel" to Detective Murray as to possible charges that could be brought against Thai, Rettler engaged in an activity outside his prosecutorial role and is thus not entitled to absolute immunity under the 11th Amendment.
>
> The Second Circuit views the pre-litigation function that a prosecutor performs as having at least two aspects: "(1) the supervision and interaction of law enforcement agencies in acquiring evidence which might be used in a prosecution; and (2) the organization, evaluation, and marshalling of this evidence into a form that will enable the prosecutor to try a case, seek a warrant, indictment, or order." *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987). While expressing no opinion on the second category, the court found "that the first category consists of actions that are of a police nature and are not entitled to absolute protection." *Id.*
>
> In his official-capacity, Rettler is the head of the Asian Gang Unit. In this capacity he conferred with police over the possible charges against Thai. Further, he visited Ta at the jewelry store to discuss the possible arrest of Thai. Under these circumstances, we find that Rettler's relationship with the police falls within the first *Barbera* category and he is, thus, not entitled to absolute immunity. Rettler may, however, be entitled to qualified immunity for actions within *Barbera*'s first category. Such qualified immunity from suit is appropriate if a prosecutor's conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). With respect to acts that are 'administrative' or 'investigative',[ ]qualified immunity is the most protection from suit Rettler could obtain. . . . In evaluating the circumstances, the inquiry is one of objective reasonableness. . . .
>
> The constitutional right at issue here arose out of an alleged "special relationship" between law enforcement officials and Ta, such that Ta was entitled to police protection from a private individual. Assuming the allegations in the complaint are true, we cannot say that Rettler could not have been reasonably aware of the existence of a constitutional duty to protect Ta. . . . Thus, we find that plaintiffs have adequately stated a claim with respect to Rettler.
>
> While defendant Rettler has moved, in the alternative, for summary judgment, we find that summary judgment is inappropriate at this stage of the litigation. The extent of Rettler's activities in relation to other law enforcement officials is clearly in dispute, thus raising issues of material fact as to whether Rettler was acting in his prosecutorial role or as an investigator. Based on this record, we decline to grant summary judgment for defendant Rettler.

District Court Opinion at 6–9.

Rettler has appealed from the denial of his motion, and plaintiffs have cross-appealed from so much of the order as granted Morgenthau's motion. The other individual defendants and the City of New York initially sought to appeal the denial of their motions, but their appeals have been withdrawn.

## II. RETTLER'S APPEAL

On his appeal, Rettler contends principally that the district court erred in not ruling that he was entitled to absolute immunity or, alternatively, qualified immunity. Preliminarily, we note that although the district court analyzed the availability of these privileges in terms of the parties' arguments as to whether Rettler's alleged conduct was "outside his prosecutorial role and is thus not entitled to absolute immunity under the 11th Amendment," District Court Opinion at 7; *see also id.* at 6–7, these arguments confused two types of immunities. The privileges of absolute and qualified immunity are entirely distinct from the immunity conferred by the Eleventh Amendment.

■ The Eleventh Amendment, with few exceptions, bars federal courts from entertaining suits brought by a private party against a state in its own name. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). The availability of immunity under the Eleventh Amendment does not depend on the nature of the function performed by the state.

■ The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Hafer v. Melo,* —— U.S. ——, ——, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity. *See, e.g., id.* at ——, 112 S.Ct. at 365; *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (Eleventh Amendment does not bar award of damages to be paid not from the state treasury but from the official's personal funds). Nonetheless, when the state official, or any other governmental official, is sued for dam-

ages in his individual capacity, he may, depending in part on the nature of the function performed, as discussed in Part II.A. below, be entitled to absolute immunity or qualified immunity. These defenses of absolute immunity and qualified immunity are the official's personal privileges for his official acts. They do not belong to the governmental entity, and the entity itself is not allowed to assert them. *See Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980).

■ To the extent that a state official is sued in his official capacity, "the *only* immunities available to [him] ... are those that the governmental entity possesses." *Hafer v. Melo,* —— U.S. at ——, 112 S.Ct. at 362 (emphasis added); *see also Kentucky v. Graham,* 473 U.S. at 167, 105 S.Ct. at 3105. Therefore, since the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities. They are not available to the extent that the officials are sued in their official capacities.

In sum, the capacities in which a state official is sued for damages under § 1983 establish parallel lines of privileges. To the extent that such a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit, but he may not assert a personal official privilege of absolute or qualified immunity. To the extent that such a claim is asserted against him in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.

In the present case, the district court, though noting that the complaint is silent as to the capacity in which the individual defendants are sued, ruled that it asserts claims against Rettler in only his official capacity. If ultimately correct, that ruling obviated the need for analysis of Rettler's claims of absolute or qualified immunity, *i.e.,* privileges that are available only in defense of individual-capacity claims. However, the failure of a

complaint to specify that claims against government officials are asserted against them in their individual capacities generally does not warrant an outright dismissal at the pleading stage, for " '[i]n many cases,' a complaint against public officials 'will not clearly specify whether officials are sued personally, in their official capacity, or both,' and only ' "[t]he course of proceedings" ... will indicate the nature of the liability to be imposed,' " *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir.1991) (quoting *Kentucky v. Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3105 n. 14 (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985))). It is therefore more appropriate for the court to allow the case to proceed against the officials in their individual capacities, requiring, if appropriate, an amendment to provide greater notice to the defendants. *Oliver Schools, Inc. v. Foley*, 930 F.2d at 252–53.

Although we do not think it is clear that only official-capacity claims are asserted, we conclude that all of the claims against Rettler should have been dismissed. To the extent that plaintiffs' claims are asserted against him in his official capacity, they should have been dismissed, as discussed with respect to Morgenthau in Part III below, either for failure to state a claim or because they are barred by the Eleventh Amendment. To the extent that the claims seek damages from Rettler in his individual capacity, they should have been dismissed on either the absolute or the qualified immunity grounds we discuss next.

*A. Absolute Immunity*

■ The entitlement of a prosecutor to absolute immunity from a claim for damages against him in his individual capacity on account of his official actions depends principally on the nature of the function performed, not on the office itself. *See, e.g., Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir.1988). It is well-settled that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under § 1983. *Imbler v. Pachtman*, 424 U.S. 409,

430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976); *see also Burns v. Reed*, —— U.S. ——, ——, 111 S.Ct. 1934, 1938–39, 114 L.Ed.2d 547 (1991); *Robison v. Via*, 821 F.2d 913, 918 (2d Cir.1987); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981). A prosecutor thus has absolute immunity in connection with the decision whether or not to commence a prosecution. *See, e.g., Imbler v. Pachtman*, 424 U.S. at 431, 96 S.Ct. at 995 (absolute immunity for "initiating a prosecution"); *Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir.1987) (filing a criminal information); *Taylor v. Kavanagh*, 640 F.2d at 453 (negotiating a guilty plea); *Powers v. Coe*, 728 F.2d 97, 103–04 (2d Cir.1984) (entering an agreement not to prosecute); *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir.1989) ("[A]s a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on the decision *not* to prosecute." (emphasis in original)).

Since as a matter of due process, a defendant to a criminal prosecution must be informed of the charges against him, *see, e.g., In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948), the question of whether or not to institute a prosecution necessarily encompasses the question of precisely what charges will or will not be made. Hence a prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged.

■ Absolute prosecutorial immunity, however, extends only so far as is necessary either to protect the prosecutor against retaliation and hindsight challenges with respect to his prosecutorial decisions or to guarantee the effective functioning of the judicial process. Thus, generally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. *See, e.g., Imbler v. Pachtman*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33; *Robison v. Via*, 821 F.2d at 918; *Taylor v. Kavanagh*, 640 F.2d at 452. "Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Fields v. Soloff*, 920 F.2d 1114, 1120 (2d Cir.1990). In its most recent decision on prosecutorial immunity, the Supreme Court ruled that absolute im-

munity does not extend to the "prosecutorial function of giving legal advice to the police" as to whether a proposed method of acquiring information from a suspect—hypnosis— was an acceptable investigative technique. *Burns v. Reed,* —— U.S. at ——, 111 S.Ct. at 1944–45. In *Burns,* there was no pending prosecution or decision as to whether there would be a prosecution against the suspect in question. The police were investigating a crime and attempting to determine whether that suspect was the perpetrator, and the advice provided by the prosecutor was designed to facilitate the police officers' gathering of information. The Court concluded that the prosecutor was not entitled to absolute immunity for performance of his advisory function, stating that it "d[id] not believe ... that advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process,' ... that it qualifies for absolute immunity." *Id.* at ——, 111 S.Ct. at 1943 (quoting *Imbler v. Pachtman,* 424 U.S. at 430, 96 S.Ct. at 994); *see also Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (absolute immunity not accorded a prosecutor involved in "the supervision of and interaction with law enforcement agencies in *acquiring* evidence which might be used in a prosecution" (emphasis in original)), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

The complaint in the present case, which makes many assertions against "defendants" in general, may be interpreted as asserting essentially three claims against Rettler: (1) that he declined to institute a criminal proceeding against Thai on felony charges with respect to the February 11 tampering and advised the police not to arrest Thai on such charges, (2) that he exposed Ta to an unreasonably increased risk of retaliation by causing him to make the February 13 face-to-face identifications, and (3) that he failed to provide Ta with protection against Thai and BTK. The different nature of the conduct asserted in these claims requires different immunity analyses.

■ The first claim focuses squarely on prosecutorial decisions as to whether or not to institute a prosecution, and if so on what

charges. These are plainly decisions as to which Rettler is entitled to absolute immunity. Further, a prosecutor's communication to police officers of his decision as to precisely what charges he would, and what charges he would not, lodge against a given individual is so closely related to the prosecutorial decision itself as to warrant absolute immunity. Thus, to the extent that the complaint asserts that Rettler failed to fulfill an alleged obligation to prosecute Thai or to charge him with commission of a felony offense, and that he informed the police as to what charges would or would not be lodged, Rettler was entitled to summary judgment dismissing those claims on the ground of absolute immunity.

■ The other two claims, however, cannot be disposed of on this ground. To the extent that plaintiffs claim that Rettler caused the face-to-face identifications they plainly assert conduct of an investigative, not prosecutorial, nature; and the claim that Rettler failed to protect Ta asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if Rettler is to be accorded immunity with respect to these two claims, it can only be a qualified immunity.

B. *Qualified Immunity*

■ The privilege of qualified immunity generally shields government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The availability of the defense generally turns on the "'objective legal reasonableness'" of the allegedly unlawful official action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818–19, 102 S.Ct. at 2738); *see also Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993); *Golino v. City of New*

*Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). To determine whether a particular right was clearly established at the time defendants acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992); *see also Benitez v. Wolff,* 985 F.2d at 666; *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039.

▮▮▮ Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by qualified immunity. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738; *Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992); *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *see also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Disposition by summary judgment is ordinarily appropriate when the qualified immunity defense is based on a showing that it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by federal law. Summary judgment may also be available when the defendant's premise is that "even if the contours of the plaintiff's federal rights and the official's permissible

actions were clearly delineated at the time of the acts complained of, ... it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d at 921; *see also Hurlman v. Rice,* 927 F.2d 74, 78 (2d Cir.1991); *Walsh v. Franco,* 849 F.2d 66, 69 (2d Cir.1988). Though this premise

> has its principal focus on the particular facts of the case[, i]t may nonetheless permit the granting of summary judgment to the defendants if they adduce sufficient uncontroverted facts that, even looking at the evidence in the light most favorable to the plaintiffs and drawing all inferences favorable to the plaintiffs, no reasonable jury could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not violate an established federally protected right.

*Hurlman v. Rice,* 927 F.2d at 78–79; *see also Robison v. Via,* 821 F.2d at 921.

▮▮▮ In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. *L & L Started Pullets, Inc. v. Gourdine,* 762 F.2d 1, 3 (2d Cir.1985); *SEC v. Research Automation Corp.,* 585 F.2d 31, 33–35 (2d Cir.1978); *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187–88 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978). If the nonmoving party does not so respond, summary judgment will be entered against him. Fed.R.Civ.P. 56(e). If facts essential to support opposition to the summary judgment motion are not available, the nonmoving party may seek a continuance under Rule 56(f) to permit affidavits to be obtained or discovery to be had, but may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, *L & L Started Pullets, Inc. v. Gourdine,* 762 F.2d at 3–4; *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983); *Curl v. IBM Corp.,* 517 F.2d 212, 214 (5th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), or

"upon the mere allegations or denials of the [nonmoving] party's pleading," Fed.R.Civ.P. 56(e).

■ These principles raise insurmountable barriers to plaintiffs' claim against Rettler for failure to provide.Ta with protection, for "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989) ("*DeShaney*"). Thus, "[a]s a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004.

■ Other language in *DeShaney* has been interpreted as recognizing that in exceptional circumstances a governmental entity may have a constitutional obligation to provide such protection, either because of a special relationship with an individual, *see id.* at 198, 109 S.Ct. at 1004 ("in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals"), or because the governmental entity itself has created or increased the danger to the individual, *see id.* at 201, 109 S.Ct. at 1006 (holding no due process violation by state that had done nothing "to render [parentally mistreated child] ... more vulnerable"). *See generally D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1368–70 (3d Cir.1992) (en banc) (discussing special-relationship exception), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Dwares v. City of New York,* 985 F.2d 94, 98–99 (2d Cir.1993) ("*Dwares* ") (discussing increase-of-vulnerability exception).

Special relationships that have been recognized to give rise to a governmental duty to protect against third-person attacks have included custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child. *See DeShaney,* 489 U.S. at 198–99, 109 S.Ct. at 1004–05 (state may have obligation under Eighth Amendment to protect incarcerated individuals, citing *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976)); *Hutto v. Finney,* 437 U.S. 678, 684, 687, 98 S.Ct. 2565, 2570, 2571, 57 L.Ed.2d 522 (1978) (state has duty to protect vulnerable inmates where its creation of prison conditions, violating Eighth Amendment, increased danger of violence); *but see Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (merely negligent failure to protect one prisoner from another is not sufficient to establish violation of Due Process Clause); *see Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982) (state mental institution has duty under Due Process Clause to protect involuntarily committed patient); *Doe v. New York City Department of Social Services,* 649 F.2d 134, 141 (2d Cir.1981) (city social service agency having notice of prior mistreatment has duty to protect child from harm inflicted by foster parents), *appeal after remand,* 709 F.2d 782, *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *see also DeShaney,* 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9 (citing *Doe* and expressing no view on whether a government's placement of a child in foster home would present "a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect").

With respect to the increase-of-vulnerability exception to *DeShaney* 's general rule, we held in *Dwares* that a complaint alleging that police officers (a) agreed in advance with a certain group to allow members of that group to assault the plaintiff with impunity, (b) stood by without interfering when plaintiff was in fact beaten, and (c) did not arrest the assaulters, stated a claim for deprivation of due process because it alleged that government officials had "assisted in creating or increasing the danger to the victim." 985 F.2d at 99; *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reinstating claim against police chief who instructed subordinates to ignore victim's pleas for protection from her husband, who was the chief's friend); *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 356–59 (11th Cir.1989)

(reversing summary judgment in favor of town, which had used prison inmates to work on town hall grounds, in suit by town clerk abducted by inmates), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

Plaintiffs attempt to bring their claims under the special-relationship exception to *De-Shaney*'s general rule by asserting in their complaint that Ta had a special relationship with defendants and thus possessed a clearly established constitutional right to protection. The district court noted this "alleged 'special relationship' between law enforcement officials and Ta, such that Ta was entitled to police protection from a private individual," and stated that, "[a]ssuming the allegations in the complaint are true," the court could not conclude "that Rettler could not have been reasonably aware of the existence of a constitutional duty to protect Ta." District Court Opinion at 9. This assessment insufficiently distinguished between questions of fact and questions of law. The nature of the relationship, here that between law enforcement officials and a complaining witness who was asked to identify suspects, is a question of fact. But whether such a relationship triggers a duty on the part of a given governmental official to provide protection against an attack by private actors is a matter of law. In assessing the sufficiency of a pleading to state a claim on which relief can be granted, the court is required to accept as true only the pleading's factual allegations, not the assertions of law. *See generally* 2A *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–63 to 12–64 (2d ed. 1993) ("legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness"). Likewise, with respect to a motion for summary judgment, questions of law are for the court. Thus, the district court made an unwarranted assumption of the truth of the complaint's allegation that Ta "was entitled" to protection. Whether or not there was such an entitlement was a question of law, and if the court could not conclude that a complaining witness who was asked to identify suspects had a clearly established constitutional entitlement to governmental protection from attack by private individuals, and that the corresponding obligation to protect fell at least in part on the prosecutors, Rettler was entitled to summary judgment on the ground of qualified immunity.

As the district court noted, the "parameters of what constitutes a special relationship . . . are hazy and indistinct." District Court Opinion at 10. In *Barbera v. Smith,* 836 F.2d 96, we considered a claim that a federal prosecutor had failed to respond to a cooperating witness's repeated requests for police protection; the witness was later murdered by the target of the investigation. We held that the prosecutor was entitled to qualified immunity because he had no clearly established duty to protect at the time of the witness's death in 1982. *Id.* at 102. We did not make it any clearer as to what the law was at the time of our decision in 1987. *See id.* ("express[ing] no opinion on how this question would be resolved based on the caselaw as it exists today"). Plaintiffs have not called to our attention any case before or since, and we are aware of none, in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose the corresponding duty on a prosecutor. Thus, we need not decide whether we would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection requested by Ta, if indeed there were such a request and failure, would have violated Ta's rights under the Constitution.

In addition, we note that Rettler's affidavit stated that on February 19 or 20 Rettler had in fact asked Ta whether he was satisfied with the police protection he was receiving and Ta stated that he was. Plaintiffs did not make any showing in opposition to this assertion sufficient to create a genuine issue for trial. Though the Gan affidavit, for example, contains some 15 express statements as to what Ta "told" Gan or "informed" her of, conspicuously absent is any averment that Ta ever told Gan that he had requested Thai's

arrest or additional protection. Nor is there any suggestion of such a request in the affidavit of Ta's business partner Tran. To the contrary, Tran stated that Ta had been "very proud of himself," somewhat "boast[ful]" of his experience with the face-to-face identifications, and "did not feel threatened because he had the police with him and that they protected him." The Tran affidavit thus does not contradict but rather tends to support Rettler's assertion that Ta stated he was satisfied with the protection he was receiving. We doubt that a prosecutor would violate a complaining witness's due process rights by failing to provide the witness with additional protection when the witness has expressly denied that he wants additional protection. In any event, even if that were the law, it could not have been clear to an objectively reasonable prosecutor that it was the law.

▮ Plaintiffs also seek to bring their claims within the ambit of *Dwares* by arguing that defendants unreasonably increased Ta's vulnerability by insisting that he attempt a face-to-face identification of the would-be extortionists. We are constrained first to note our skepticism as to whether that procedure could be deemed to have increased the risk to Ta unreasonably, since the would-be extortionists obviously already knew who he was. Ta himself had called in the police, and if charges were lodged, even without a face-to-face identification, the offenders could have no doubt that it was Ta who was their accuser. More importantly for the purposes of this appeal, plaintiffs have provided no factual support for an assertion that Rettler played any role in causing Ta to undertake that identification. Rettler submitted his own affidavit stating that he had not participated in any pretrial identification procedures involving Ta. The complaint itself is consistent with this representation, since it attributes the insistence on a face-to-face identification not to the prosecutors in particular or even generally to all of the defendants but merely to "[d]efendant[s] ... or some thereof." Plaintiffs did not submit any evidence to controvert the representation in Rettler's affidavit that he played no role in requesting that identification; nor did they adduce any factual basis for discrediting it. Thus, plaintiffs failed to support the crucial element of so much of their claim against Rettler as is based on the face-to-face identifications.

Finally, we note that as to a valid claim for prospective injunctive relief, Rettler would not have immunity under the Eleventh Amendment, *see Edelman v. Jordan*, 415 U.S. at 664, 94 S.Ct. at 1356; nor would he be entitled to a defense of absolute immunity, *see, e.g., Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir.1979) (per curiam), or qualified immunity, *see, e.g., Giacalone v. Abrams*, 850 F.2d 79, 84 (2d Cir.1988). However, though the complaint requested injunctive and declaratory relief "if ... appropriate," the district court found that plaintiffs had alleged no basis for such relief. In this Court, plaintiffs have shown no basis for disturbing that ruling.

For the above reasons, we conclude that Rettler was entitled to summary judgment dismissing all of the § 1983 claims asserted against him in his individual capacity. The court should also, pursuant to 28 U.S.C. § 1367(c)(3) (Supp. II 1990), dismiss the state-law claims asserted against him, as it apparently dismissed such claims against Morgenthau.

## III. PLAINTIFFS' CROSS–APPEAL

▮ On their cross-appeal, plaintiffs contend that the district court erred in dismissing their claims against Morgenthau. Though Morgenthau's status is somewhat complex even if the complaint asserted claims against him only in his official capacity, not his individual capacity, we see no basis for reversal.

The district court ruled that Morgenthau had been sued only in his official capacity, and that he must therefore be treated as a state official:

"[I]n spite of the statutory classification a District Attorney is not an officer or employee of the municipality (*Zimmerman v. City of New York*, 52 Misc.2d 797, 276 N.Y.S.2d 711) but is instead a quasi-judi-

cial officer acting for the state in criminal matters (*Manceri v. City of New York,* 12 A.D.2d 895, 209 N.Y.S.2d 915)." *Davis Construction Corp. v. County of Suffolk,* 112 Misc.2d 652, 447 N.Y.S.2d 355, *aff'd* 95 A.D.2d 819, 464 N.Y.S.2d 519 (2d Dep't 1983).

District Court Opinion at 6. This ruling was correct to the extent that the complaint attacked a decision as to whether or not to prosecute Thai. "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989). Thus, to the extent that the complaint alleged that Morgenthau was implicated in Rettler's decision not to bring charges against Thai, Morgenthau was properly deemed to be an official of New York State and was entitled to invoke Eleventh Amendment immunity.

■ Further, although § 1983 imposes liability on every "person" who, under color of state law or custom deprives another of a federal right, neither a state nor a state official sued in his official capacity is a "person" within the meaning of this section. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 2307, 2311, 105 L.Ed.2d 45 (1989); *Hafer v. Melo,* —— U.S. at ——, 112 S.Ct. at 362. Thus, as to a § 1983 claim for damages against Morgenthau in his official capacity as a state official, the complaint failed to state a claim on which relief can be granted.

■ With respect, however, to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned. *See, e.g., Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992) (office policy governing disclosure of exculpatory material and subornation of perjury), *cert. denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *Gentile v. County of Suffolk,* 926 F.2d 142, 152 n. 5 (2d Cir.1991) (office policy as to disciplining of law enforce-

ment personnel). Where, as to such administrative matters, the district attorney acts as "manager" of the District Attorney's office of one of New York City's constituent counties, he may be considered a municipal policymaker for the City of New York. *See Walker v. City of New York,* 974 F.2d at 301; *see also id.* (as manager of a county district attorney's office outside of New York City, district attorney acts as a policymaker for the county). ·To the extent that the complaint here alleged that Morgenthau as the District Attorney for New York County had promulgated a policy or custom regarding the February 13 face-to-face identifications and the alleged failure to protect Ta, Morgenthau may be deemed to be a municipal policymaker for New York City. Plaintiffs have failed, however, to allege any facts to support their contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office. *See Dwares,* 985 F.2d at 100 ("mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

■ To the extent that the complaint sought to assert individual-capacity claims against Morgenthau, plaintiffs fare no better, for a supervisory official cannot be held liable under § 1983 on a theory of respondeat superior. *See, e.g., Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The complaint contained only conclusory and speculative assertions with respect to Morgenthau, such as that quoted in Part I.B. above, that "[i]t is believed" that "personnel in the District Attorney's Office" engaged in the alleged conduct "pursuant to the practice, custom, policy and particular direction of Robert Morganthau [*sic* ]." (Complaint ¶ 31.) This does not allege either explicitly or by assertion of facts from which such an inference could be drawn that Morgenthau personally participated in the actions that plaintiffs challenge. Further, even if the complaint were deemed sufficient to allege direct participation by Morgenthau, Morgenthau would be entitled to the same immunity defenses

that, in Part II above, we have held available to Rettler.

In sum, we see no basis for reversal of the district court's dismissal of the claims against Morgenthau.

## CONCLUSION

For the foregoing reasons we reverse so much of the district court's order as denied the motion of Rettler for summary judgment and we remand for entry of judgment dismissing the claims against him. We affirm so much of the order as dismissed the claims against Morgenthau. We of course express no view as to the merits of plaintiffs' claims against the remaining defendants.