[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Ralph Bradley brings this action seeking money damages through his father and conservator, Julius Bradley. This action arises out of the discharge of the plaintiff in February 1993 from Fairfield Hills Hospital to a community residence for the disabled called Kinsella Commons, which was owned and operated by the defendant Central Naugatuck Valley Help, Incorporated. The plaintiff alleges that he suffered from a severe brain injury, a seizure disorder and alcoholism at the time of his discharge and that he was not properly supervised at Kinsella Commons. As a result of this CT Page 1334 lack of supervision, the plaintiff contends, he became intoxicated on April 26, 1993 and was permitted to leave Kinsella Commons that day without supervision despite his known intoxication. He claims that in the evening of April 26, 1993, while intoxicated and unsupervised, he walked into traffic on Willow Street in Waterbury, was struck by a motor vehicle and suffered multiple serious, permanent physical injuries as a result of which he will be confined to a nursing home with round-the-clock medical care and supervision for the rest of his life.
The defendant Jesen C. Fan, M.D. was the plaintiff's psychiatrist at Fairfield Hills, a state hospital. The defendant Peggy Osborne, an employee of the Connecticut Department of Health, was the plaintiff's case manager, responsible for his treatment and care at Kinsella Commons. The plaintiff contends that Fan's decision that the plaintiff's needs could be met at Kinsella Commons was erroneous and that both these defendants, who are sued both in their personal and official capacities, failed to ensure that the plaintiff would receive proper treatment and supervision at Kinsella Commons.
Fan and Osborne have filed a motion to dismiss the second, third and fourth counts of the plaintiff's complaint, contending that the court lacks subject matter jurisdiction of these claims against them because they are immune from suit in both their official and individual capacities. The plaintiff disputes the immunity claims of these defendants.
A motion to dismiss is the proper motion for asserting a lack of subject matter jurisdiction. Practice Book § 143; Zizkav. Water Pollution Control Authority, 195 Conn. 682, 687 (1985). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." LeConche v. Elligers, 215 Conn. 701,709 (1990). An assertion of sovereign immunity implicates subject matter jurisdiction and therefore is properly raised by a motion to dismiss. Antinerella v. Rioux, 229 Conn. 479, 489
(1994). In ruling on the motion to dismiss, the court must consider the allegations of the complaint in the light most favorable to the plaintiff. Id. Every presumption in favor of jurisdiction is to be indulged. LeConche v. Elligers, supra,215 Conn. 709-710.
The defendants Fan and Osborne contend that they are immune from all of the plaintiff's claims against them as set forth in CT Page 1335 the second, third and fourth counts of the complaint on the basis of immunity. With respect to the claims brought against these defendants in their personal capacity they claim immunity by statute and under the common law doctrine of qualified immunity.
General Statutes § 4-165 provides in pertinent part
 No state officer or employee shall be personally liable for damage or injury not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.
There is no dispute that Fan and Osborne are state employees within the meaning of this statute and that they therefore are immune in their individual capacity unless their actions were "wanton, reckless or malicious." Each of the three counts of the complaint against these defendants must be analyzed to determine whether its allegations meet this statutory standard.
The second count of the plaintiff's complaint alleges that Fan and Osborne failed to provide humane and dignified treatment of the plaintiff in accordance with a treatment plan suited to his disorder, in violation of General Statutes §§ 17a-542. There is no allegation in the second count of any wanton, reckless or malicious action by either of these two defendants. It therefore appears that these defendants may be immune from the claim against them in their individual capacity under the statute.
The plaintiff contends, however, that a section of the Connecticut Patients' Bill of Rights, General Statutes § 17a-660, provides for personal liability of state employees who violate provisions of this bill of rights. Section 17a-550 provides
 Any person aggrieved by a violation of Sections 17a-540
to 17a-549, inclusive, may petition the Superior Court within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages.
CT Page 1336
In Mahoney v. Lensink, 213 Conn. 548 (1990), our Supreme Court held that the statutory predecessor to § 17a-550 abrogates the state's sovereign immunity and authorizes suit against the state or its commissioners for mistreatment of a patient within a state mental health facility. Id., 558. The decision did not address, however, whether General Statutes § 17a-550 authorizes suit against state employees in an individual capacity.
The plaintiffs argue that it is "implicit" in a footnote inMahoney and in General Statutes § 4-165 "that when a state officer or agent exhibits misconduct beyond certain limits, the state officer no longer `represents the state' but is liable in an individual capacity." The footnote in question reads
 Because the state acts through its officers and agents, a suit against an officer concerning a matter in which the officer represents the state is, in effect, a suit against the state.
(Citations omitted.) Id., n. 9.
The court is not persuaded that the footnote in Mahoney has any bearing on the alleged personal liability of the defendants Fan and Osborne and rejects the plaintiff's contention that § 17a-550, as construed in Mahoney, provides for personal or individual liability of state employees.
The second count of the plaintiff's complaint contains no allegations of any wanton, reckless or malicious acts by either Fan or Osborne. They are therefore immune from suit in their personal capacity under General Statutes § 4-165 and the motion to dismiss the second count is granted insofar as it alleges personal liability.
The third and fourth counts of the plaintiff's complaint allege wanton negligence on the part of Fan and Osborne, which would make the statutory immunity inapplicable. These defendants contend, however, that the plaintiff's complaint fails to make sufficiently specific allegations of wanton, reckless or malicious conduct.
There is no dispute that a complaint must set forth specific factual allegations which would support a finding of wanton or reckless conduct. Wilful, wanton or reckless conduct all refer to the same type of conduct. Dubay v. Irish,
CT Page 1337207 Conn. 518, 533 (1988). It is highly unreasonable conduct which involves an extreme departure from ordinary care. Id.
In the third and fourth counts of the complaint the plaintiff alleges that the defendants so substantially deviated from accepted standards of practice as to indicate that professional judgment was not exercised or that there was wanton neglect. Further specifications include allegations that Fan and Osborne failed to provide direct supervision of the plaintiff to prevent injury to him and that they failed to provide staff for direct supervision of the plaintiff after he consumed alcohol. In Mahoney v. Lensink, supra, 213 Conn. 572, the Supreme Court cited with approval the Appellate Court finding that failure to restrict or control a patient so as to prevent suicide was a sufficient allegation of wanton neglect. Mindful that the court is required to consider the allegations of the complaint in the manner most favorable to the plaintiff, the court finds that these allegations of the failure to provide supervision for a patient suffering from severe brain injury, seizures and alcoholism are sufficient specifications of wanton neglect, in a manner analogous to the allegations in Mahoney.
The defendants' final claim of immunity with respect to the claims against them in their personal capacity is that with respect to the allegations of the fourth count of the complaint, they enjoy qualified immunity under the federal law. The fourth count alleges that Fan and Osborne "violated the plaintiff's right to reasonably safe conditions, adequate medical care and protection from harm secured by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983."
Qualified immunity is recognized as a defense to civil suits brought against government officials under 42 U.S.C. § 1983.Schnabel v. Tyler, 230 Conn. 735, 742 (1994). Qualified immunity is a matter of federal law and state courts reviewing such a claim are bound by federal precedent. Id. Connecticut state courts must give special consideration to decisions of the Second Circuit Court of Appeals on qualified immunity. Id.
In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court established an "objective reasonableness" standard for determining whether the actions of a government official are protected by qualified immunity. Government officials are protected from liability for civil damages if their conduct does not violate clearly established statutory or CT Page 1338 constitutional rights of which a reasonable person would have known. Id., 817. If the law at the time the official acted
 was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to `know' that the law forbade conduct not previously identified as unlawful . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent government official should know the law governing his conduct.
Id. Unless the plaintiff's allegations claim a violation of "clearly established law," the defendants are entitled to dismissal of the action. Ying Jing Gan v. City of New York,996 F.2d 522, 532 (2d Cir. 1993). Dismissal is proper if it was not clear at the time the official acted that the interest asserted by the plaintiff was protected by federal law. . Id.
The plaintiff alleges in the fourth count of his complaint a constitutional right under the Fourteenth Amendment to "reasonably safe conditions, adequate medical care and protection from harm . . ." as someone suffering from brain injury and seizures under the shared supervision of the Connecticut Department of Mental Health and Central Naugatuck Valley Help, Incorporated. To overcome the defendant's qualified immunity, the plaintiff must demonstrate that the right allegedly violated by the defendant was "clearly established" at the time of the conduct complained of. Davis v. Scherer, 468 U.S. 183, 197
(1984). The plaintiff relies chiefly on Youngberg v. Romeo,457 U.S. 307 (1982), in support of his claim. The respondent in that case was a severally mentally retarded adult who was involuntarily committed by court order to the custody of the State of Pennsylvania at a state hospital. The Supreme Court upheld his right under the Fourteenth Amendment to safe conditions, freedom of movement and training, all "within the institution." Id., 315. The decision focused closely and repeatedly on the respondent's involuntary commitment to the state and his residence at a state operated institution.
The plaintiff in the present case, however, does not allege that he is involuntarily committed to the custody of the State of Connecticut; the source of the state's supervisory powers over him is not explained in the complaint. Furthermore, at the time of the actions or inactions complained of, the plaintiff CT Page 1339 resided at Kinsella Commons, a privately owned group home; he did not reside in a state-operated institution. Youngberg does not address the rights of a person not residing in a state operated institution, but rather in a privately owned group home facility for the disabled, where a resident has considerably more personal freedom. Because of these two significant factual distinctions, it cannot be said that Youngberg "clearly established" the rights of the plaintiff at the time of the conduct complained of.
The plaintiff also relies on several Second Circuit decisions which allegedly concern the constitutional rights of persons in state custody. A court should consider the decisions of the applicable Circuit Courts of Appeals in determining whether the constitutional right(s) in question were "clearly established." Ying Jing Gan v. City of New York, supra, 996 F.2d 532.
In Doe v. New York City Dept. of Social Services, 649 F.2d 134
(2d Cir. 1981), the plaintiff brought a § 1983 action alleging that while she was in the legal custody of the defendant Department of Social Services, she was placed in a foster home where she was physically and sexually abused by her foster father. The Second Circuit Court of Appeals found that the agency could be held liable under § 1983 where its "top personnel" exhibited deliberate indifference to "a known injury, a known risk or a specific duty . . ." and their failure to act was a proximate cause of the deprivation of the plaintiff's constitutional rights. Id., 145. Doe also is distinguishable from the present case. There is no allegation here that the plaintiff was committed to the legal custody of the Connecticut Department of Mental Health or of Fairfield Hills Hospital. Nor is there any allegation that "top personnel" of either the Department of Mental Health or Fairfield Hills Hospital were deliberately indifferent to the alleged risk(s) involved in having the plaintiff reside at Kinsella Commons.
The remaining cases cited by the plaintiff, Hillburn byHillburn v. Maher, 795 F.2d 252 (2d Cir. 1986), and Dwares v.City of New York, 985 F.2d 94 (2nd Cir. 1993), are not on point. Hillburn is not a § 1983 action; it interprets the statutory rights of Title 19 nursing home patients. Dwares
involves an alleged infringement of the plaintiff'sfirst amendment rights. CT Page 1340
The plaintiff has failed to show that Fan and Osborne violated clearly established law in allegedly failing to provide appropriate supervision of the plaintiff in a community residence. Therefore, their actions or inactions as alleged in the fourth count are protected by qualified immunity under federal law. (The plaintiff conceded in its memorandum of law that insofar as the fourth count alleges a § 1983 claim against Fan and Osborne in their official capacities, it should be dismissed.) The motion to dismiss is accordingly granted with respect to all allegations of the fourth count.
With respect to the second and third counts against Fan and Osborne in their official capacities, the defendants contend that they enjoy sovereign immunity because the abrogation of sovereign immunity found in General Statutes § 17a-550 extends only to certain claims under General Statutes §§ 17a-541 and 17a-542, but not to all claims made under those sections. The defendants base this claim on their narrow reading of Mahoney v.Lensink, supra.
In the second count of his complaint the plaintiff alleges a violation of General Statutes § 17a-542, which reads
 Every patient treated in any facility for treatment of persons with a mental illness shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to, (1) reasonable notice to the patient of his impending discharge, (2) active participation by the patient in planning for his discharge and (3) planning for appropriate aftercare to the patient upon his discharge.
In the third count of his complaint the plaintiff alleges a violation of General Statutes § 17a-541, which reads
 No patient hospitalized or treated in any public or private facility for the treatment of persons with a mental illness shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and contract, except in accordance with due process of law, and unless he has CT Page 1341 been declared incompetent pursuant to sections 45a-644
to 45a-662, inclusive. Any finding of incompetency shall specifically state which civil or personal rights the patient is incompetent to exercise.
The defendants contend that the waiver of sovereign immunity found in § 17a-550 does not extend to the plaintiff's claims, which relate to his placement in a community residence and the conditions of his residing there, including his right to reasonable safety. This contention is without merit.
Section 17a-542 specifically provides that humane and dignified treatment "shall include . . . planning for appropriate aftercare to the patient upon his discharge." Kinsella Commons was the location of the plaintiff's aftercare. Section 17a-541
concerns treatment in any public or private facility for the treatment of persons with mental illness. Given the broad statutory definitions set forth in General Statutes § 17a-540, Kinsella Commons comes within the definition of such a facility. The plaintiff's claims in the second and third counts are within the scope of the two statutes in question.
Moreover, § 17a-550 provides for a civil action for damages to be brought by any person "aggrieved by a violation of §§ 17a-540
to 17a-549, inclusive . . ." There is no language in § 17a-550
nor in the Mahoney case which supports the defendants' claim that the waiver of immunity in § 17a-550 was intended to apply only to some alleged violations of §§ 17a-542 and 17a-541 but not to all. To the contrary, the Supreme Court has stated that the provisions of the patients' bill of rights should be liberally construed because they are remedial in nature. Mahoney v.Lensink, supra, 213 Conn. 556. The defendants' motion to dismiss the second and third counts of the complaint insofar as they make claims against these defendants in their official capacities is denied.
VERTEFEUILLE, J.