**Ronnie COVINGTON, Plaintiff,**

v.

**The CITY OF NEW YORK, et al., Defendants.**

**No. 94 Civ. 4234.**

United States District Court, S.D. New York.

Feb. 9, 1996.

Ronnie Covington, Comstock, NY, pro se.

Marc Frazier Scholl, Ass't Dist. Atty., Robert M. Morgenthau, District Atty., NY County, New York City, Jose Antonio Aquino, Paul A. Crotty, Corp. Counsel of the City of New York, New York City, for defendants.

SCHEINDLIN, District Judge.

I have carefully reviewed this thorough and comprehensive Report and Recommendation although I extended plaintiff's time to object to this Report to and including January 25, 1996, no objection has been received. The time to object has now expired. I therefore accept and adopt in full the excellent Report of the Magistrate Judge. A status conference with respect to the remaining claims will be held on February 22, 1996 at 4:30 p.m.

So Ordered.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Defendants Robert M. Morgenthau ("District Attorney Morgenthau") and former Assistant District Attorney Saul Bienenfeld ("A.D.A. Bienenfeld") (collectively, the "District Attorney Defendants") move to dismiss plaintiff Ronnie Covington's 42 U.S.C. § 1983 case pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, I recommend that the Court grant the District Attorney Defendants' motion because (1) Covington's false imprisonment and false arrest claims are barred by the statute of limitations, (2) Covington's malicious prosecution, prosecutorial misconduct before the grand jury, and conspiracy claims are barred by absolute prosecutorial immunity, and (3) Covington failed to adequately state a "failure to train" claim against District Attorney Morgenthau.

### FACTS

On February 18, 1991, Ronnie Covington was arrested and charged with criminal sale and possession of controlled substances in the third degree. (Amended Complaint [hereafter, "Cplt."], ¶¶ 25, 28–29, 35–36; Affidavit of Ronnie Covington, dated 3/13/95, Ex. G.) After A.D.A. Bienenfeld presented the case to the grand jury, the grand jury dismissed the charges against Covington on May 29, 1991. (Cplt. ¶ 41; Covington Aff. Ex. H.) On June 12, 1991, the Supreme Court (New York County) dismissed the indictment against Covington. (Cplt. ¶ 42; Covington Aff. Ex. H.)

On May 23, 1994, Covington filed his original complaint when he handed it, along with a completed disbursement request, authorized advance request and an affidavit of service and cover letter, to prison officials. (Covington's Aff. ¶ 8 & Ex. B; see also Cplt. ¶ 2.) The complaint was docketed with the Court on June 9, 1994.

Covington's claim against the District Attorney Defendants is summarized in the amended complaint as follows:

> That defendant [police officers] then conspired with ... defendants Morgenthau ... and Bienenfeld to fraudulently, mali-

ciously and without the necessary probable cause commence and prosecute a criminal action against plaintiff [Covington], and to therein slanderously, libelously, maliciously and criminally charge plaintiff verbally and in open Court and in a felony complaint and before a Grand Jury of Criminal [Possession and] Sale of a Controlled Substance ..., and to present false testimony against plaintiff and to withhold exculpatory evidence from plaintiff in the course of said criminal action, to falsely imprison plaintiff in jail until, and subsequent to, the termination of said criminal action, to defame and injure plaintiff's reputation and, to intentionally or recklessly cause plaintiff extreme emotional distress and suffering....

(Cplt. ¶ 35.)

## ANALYSIS

### I. COVINGTON'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

 The statute of limitations applicable to actions brought in federal court in New York under 42 U.S.C. § 1983 is three years. *E.g., Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Woods v. Candela,* 13 F.3d 574, 575 (2d Cir. 1994); *Singleton v. City of New York,* 632 F.2d 185, 189 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). A § 1983 cause of action accrues "when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Woods v. Candela,* 13 F.3d at 575. Thus, in determining when the statute begins to run, the "'proper focus is on the time of

the [illegal] act, not the point at which the consequences of the act become painful.'" *Bailey v. Tricolla,* CV–94–4597, 1995 WL 548714 at *3 (E.D.N.Y. Sept. 12, 1995) (*quoting Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981)).

 In a § 1983 action involving separate wrongful acts, the court must analyze each claim separately to determine when it accrued, and therefore when the limitation period runs. *Singleton v. City of New York,* 632 F.2d at 192; *Ramirez v. City of New York,* 89 Civ. 6659, 1991 WL 120363 at *1 (S.D.N.Y. June 21, 1991). Read liberally, Covington's amended complaint appears to state six causes of action against the District Attorney Defendants: (1) false arrest; (2) false imprisonment; (3) malicious prosecution; (4) conspiracy; (5) misconduct before the grand jury; and (6) failure to adequately train prosecutors. (Cplt. ¶¶ 35–44.)

 The statute of limitation for the constitutional torts of false arrest and false imprisonment accrue at the time of arrest. *Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–19 (E.D.N.Y.1994) (*citing Woods v. Candela,* 13 F.3d at 575, and *Singleton v. City of New York,* 632 F.2d at 191); *see also, e.g., Covington v. City of New York,* 94 CV 3382, 1995 WL 322222 at *2 (E.D.N.Y. May 23, 1995); *Thompson v. City of Mount Vernon,* 93 Civ. 4788, 1994 WL 561253 at *1 (S.D.N.Y. Oct. 12, 1994); *Oakes v. Cooke,* 858 F.Supp. 330, 334 (N.D.N.Y.1994); *Grant v. State of New York,* 88 Civ. 8703, 1992 WL 84549 at *3 (S.D.N.Y. April 9, 1992), *aff'd mem.,* 986 F.2d 499 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993).[1] Imprisonment does not

---

1. *Beberaggi v. New York City Transit Authority,* 93 Civ. 1737, 1994 WL 75144 at *4–5 (S.D.N.Y. March 9, 1994), held that false arrest claims do not accrue for statute of limitations purposes until the criminal proceedings are concluded in plaintiff's favor. The *Beberaggi* decision was based on *Roesch v. Otarola,* 980 F.2d 850, 854 (2d Cir.1992), in which the Second Circuit held that claims for false imprisonment, like malicious prosecution, require a showing that criminal charges concluded in plaintiff's favor. I do not believe, however, that *Roesch* requires the *Beberaggi* change in the statute of limitations period. As previously noted, a cause of action accrues when the prisoner knows of the wrong, which

would still be at the time of his arrest, even if a necessary further condition to the suit is the favorable termination of the criminal charges. Thus, while *Roesch* adds that element to the claim, it does not require the conclusion that the claim does not accrue for limitation purposes until that favorable termination has occurred.

Moreover, other decisions in this circuit after *Roesch* have not interpreted *Roesch* to require such a change in the statute of limitations. *E.g., Murphy v. Lynn,* 53 F.3d 547, 548 n. 1 (2d Cir.1995) ("Murphy does not dispute that his causes of action based in false arrest and excessive force accrued at the time of his November

toll the statute of limitations. *Thompson v. City of Mount Vernon*, 1994 WL 561253 at *1.

Thus, Covington's claims for false arrest and false imprisonment accrued on February 18, 1991, the date of his arrest. The three year statute of limitations for such claims, therefore, expired on February 18, 1994.

Covington correctly asserts that, due to the "unique" difficulties faced by incarcerated *pro se* litigants, the Supreme Court has held that a prisoner's complaint is deemed to be properly filed at the time he hands the papers to prison guards for transmittal to the court. *E.g., Houston v. Lack,* 487 U.S. 266, 270–76, 108 S.Ct. 2379, 2382–85, 101 L.Ed.2d 245 (1988); *Dory v. Ryan,* 999 F.2d 679, 681–82 (2d Cir.1993). That does not help Covington, however, because he gave his first complaint to prison officials on May 23, 1994, some three months after the statute of limitations expired on February 18, 1994. (*See* Covington Aff. Ex. B.)

■ Covington attempts to avoid the statute of limitations by arguing that all his claims are part of an ongoing conspiracy to violate his constitutional rights and that the limitations period thus did not begin to run until the conspiracy ended. (Covington Aff. ¶¶ 9–14.) But, as Covington is aware from previous litigation in which he unsuccessfully made the identical argument, " '[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlock-

ing events' does not postpone accrual of claims based on individual wrongful acts.' " *Covington v. City of New York*, 1995 WL 322222 at *3 (*quoting Singleton v. City of New York,* 632 F.2d at 192); *see also, e.g., Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995).

Thus, Covington's false arrest and false imprisonment claims are barred by the statute of limitations and should be dismissed.[2]

## II. *COVINGTON'S CLAIMS OF MALICIOUS PROSECUTION, MISCONDUCT BEFORE THE GRAND JURY AND CONSPIRACY ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY*

■ The "doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney." *Pinaud v. County of Suffolk,* 52 F.3d at 1147. The doctrine provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (*quoting Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)); *accord, e.g., Pinaud v. County of Suffolk,* 52 F.3d at 1147. The absolute immunity doctrine is "well-established and has been held

1989 encounter with the police, *see Singleton,* 632 F.2d at 191–193, and thus were properly dismissed by the District Court because of the statute of limitations."); *Bailey v. Tricolla,* 1995 WL 548714 at *3 (because plaintiff had immediate knowledge of the event, claim for false arrest accrued on day of arrest); *Thompson v. City of Mount Vernon,* 1994 WL 561253 at *1 ("cause of action for the constitutional tort of false arrest claim accrues at the time of the arrest" and not "at the time of release from jail"); *Gray v. See,* 92 Civ. 9021, 1994 WL 9660 at *1 (S.D.N.Y. Jan. 12, 1994) ("claim based on false arrest accrues on the date of the arrest itself"); *Oakes v. Cooke,* 858 F.Supp. at 334 ("claim for false arrest and false imprisonment will accrue on the date of the alleged false arrest"); *Bezerra v. County of Nassau,* 846 F.Supp. at 219.

**2.** Since the District Attorney Defendants do not argue that the remaining claims are barred by

the statute of limitations, the Court need not address that question. However, the Court notes that at least as to the malicious prosecution and conspiracy claims, the statute of limitations would not act as a bar. *See, e.g., Murphy v. Lynn,* 53 F.3d at 548 (the statute of limitations for malicious prosecution claims starts running "only when the underlying criminal action is conclusively terminated" in plaintiff's favor); *Singleton v. City of New York,* 632 F.2d at 189, 193 (same); *Oakes v. Cooke,* 858 F.Supp. at 336 (where malicious prosecution claim occurred within the statute of limitations, conspiracy claim not barred). Thus, since the underlying drug charges against Covington were dismissed by the Supreme Court on June 12, 1991, and Covington filed his complaint on May 23, 1994, the three year statute of limitations would not bar Covington's malicious prosecution and conspiracy claims.

to be needed 'to preserve the integrity of the judicial process' and to enable "zealous[ ] perform[ance of] prosecutorial duties ... [without] the constant threat of legal reprisals." *Pinaud v. County of Suffolk*, 52 F.3d at 1146 (*quoting Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir.1995)).

■ "Absolute immunity depends on 'the nature of the function performed, not [on] the identity of the actor who performed it.'" *Pinaud v. County of Suffolk*, 52 F.3d at 1147 (*quoting Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)). While a prosecutor is entitled to absolute immunity for acts "within the scope of his duties in initiating and pursuing a criminal prosecution," he or she is entitled only to "qualified immunity" for engaging in "administrative or investigative activities." *Day v. Morgenthau*, 909 F.2d 75, 78 (2d Cir.1990).

■ Covington's allegations against the District Attorney Defendants for (1) maliciously and wrongfully commencing the prosecution; (2) presenting false testimony to and withholding exculpatory evidence from the grand jury; and (3) conspiracy, are "intimately associated with the judicial phase of the criminal process," such that the District Attorney Defendants are entitled to absolute immunity.

First, a prosecutor has absolute immunity in connection with the decision whether to commence prosecution. *Hill v. City of New York*, 45 F.3d at 661 ("With respect to the third [claim], malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution."); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993) ("prosecutor thus has absolute im-

munity in connection with the decision whether or not to commence a prosecution") (*citing, inter alia, Imbler v. Pachtman*, 424 U.S. at 431, 96 S.Ct. at 995 (absolute immunity for "initiating a prosecution")).

Second, as to Covington's claims that the District Attorney Defendants presented false testimony to and withheld exculpatory evidence from the grand jury, the Second Circuit likewise "has consistently stated that prosecutors are immune from § 1983 liability for their conduct before a grand jury." *Hill v. City of New York*, 45 F.3d at 661 (citing cases); *see also, e.g., Pinaud v. County of Suffolk*, 52 F.3d at 1149. Moreover, as to Covington's claim that the District Attorney Defendants withheld exculpatory evidence from the grand jury, these alleged omissions "occurred after the prosecutorial phase of the case had begun and therefore [are] protected as a discretionary advocacy function." *Hill v. City of New York*, 45 F.3d at 662; *see also, e.g., Reid v. State of New Hampshire*, 56 F.3d 332, 336 (1st Cir.1995) (citing cases).

Third, as to Covington's conspiracy claim, it is also well established that absolute prosecutorial immunity extends to conspiracy allegations.[3] *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994) (absolute prosecutorial immunity from § 1983 liability extends for "allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial."); *see also, e.g., Pinaud v. County of Suffolk*, 52 F.3d at 1148–49 & n. 5 (citing cases); *Hill v. City of New York*, 45 F.3d at 662.

Thus, Covington's malicious prosecution, misconduct before the grand jury, and conspiracy claims against the District Attorney Defendants should be dismissed because of their absolute prosecutorial immunity.[4]

---

3. Covington's conspiracy claim also is deficient for a second reason: Covington has done no more than state vague and conclusory allegations in support of his conspiracy claim. *See, e.g., Covington v. City of New York*, 1995 WL 322222 at *3 (citing ▌es). To survive a motion to dismiss, a § 1▌3 conspiracy claim must "describe, with some degree of particularity, overt acts committed by the defendants in furtherance of the conspiracy." *Id.* Here, as in Mr. Covington's prior case, he "fails to allege any facts that

would tend to suggest the existence of a conspiracy." *Id.*

4. The Eleventh Amendment protects state officials acting in their official capacities from suits in federal court for damages for past wrongs. *E.g., Ying Jing Gan v. City of New York*, 996 F.2d at 529–30, 536; *Tekkno Laboratories v. Perales*, 933 F.2d 1093, 1097 (2d Cir.1991). For purposes of claims relating to decisions to prosecute, the District Attorney is considered a state official entitled to the protection of the Eleventh Amend-

### III. COVINGTON FAILS TO ADEQUATELY STATE A "FAILURE TO TRAIN" CLAIM AGAINST DISTRICT ATTORNEY MORGENTHAU

■ Covington's failure to train claim is not barred by absolute immunity. The Second Circuit has held that the training of assistant district attorneys is regarded as an administrative duty and, therefore, § 1983 lawsuits raising such claims are not barred by absolute immunity or by the Eleventh Amendment. *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d at 536; *Walker v. City of New York*, 974 F.2d at 301; *Gentile v. County of Suffolk*, 926 F.2d 142, 152 & n. 5 (2d Cir.1991).

■ A municipality and its supervisory officials (such as District Attorney Morgenthau), however, may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). In order to establish the liability of a supervisory official like District Attorney Morgenthau, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. *E.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–83, 106 S.Ct. 1292, 1297–300, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985).

■ A plaintiff asserting liability against a supervisor under § 1983 need not show that the municipality had an explicitly stated rule or regulation. *See Villante v. Department of Corrections of the City of New York*, 786 F.2d 516, 519 (2d Cir.1986). Rather, the inference that such a policy existed may be drawn from plaintiff's proffer of circumstantial evidence, such as evidence that the municipality (1) so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within the jurisdiction, *see, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–92, 109 S.Ct. 1197, 1204–06, 103 L.Ed.2d 412 (1989), or (2) had notice of but repeatedly failed to make any meaningful investigation into (*i.e.*, were deliberately indifferent to) charges of misconduct by lower level employees (*e.g.*, charges that police officers used excessive force), *see, e.g., Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 327–28 (2d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

■ The Second Circuit has set out "three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens." *Walker v. City of New York*, 974 F.2d at 297. Plaintiff must show that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents that employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."[5] *Id.* at 297–98.

---

ment. *See Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir.) (citing cases), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). I assume, therefore, that Covington is suing the District Attorney Defendants in their individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d at 530.

5. In *Walker*, the Court found that plaintiff had stated a cause of action against the District Attorney's office for failure to properly train A.D.A.'s on fulfilling their obligation to disclose exculpatory materials to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request vio-

lates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97.

*Walker* is distinguishable. The *Walker* Court's reasoning focused on the relative newness of the *Brady* doctrine at the time of the alleged misconduct. 974 F.2d at 300 ("we do not think that in 1971, just seven years after *Brady* was decided, that the *Brady* standard was so obvious or easy to apply as to require, as a matter of law, no training or supervision."). Since Covington's prosecution occurred more than twenty years after *Brady* and the *Brady* doctrine is now firmly established, *Walker*'s application to allegations of *Brady* violations may no longer apply. We need not decide that, however, because Covington's

In his amended complaint, Covington alleges

> [t]hat each defendant herein had knowledge of, and failed to remedy the constitutionally and statutorily defective actions and omissions taken against plaintiff by the defendants herein evidences a policy(s) created or tolerated of reckless management of and or a failure to adequately train or adequately supervise their subordinates by defendants ...

(Cplt. ¶ 40.) In his opposition to the motion to dismiss, Covington asserts that "a reasonable inference may be drawn" from his allegations in the complaint that District Attorney Morgenthau failed to adequately train his A.D.A.'s: (1) "not to prosecute without necessary probable cause persons whom they come into contact with," (2) "not to prosecute, or aid in the prosecution of, innocent persons," and (3) "not to commit or suborn perjury, falsify inculpatory evidence or suppress exculpatory evidence." (Covington Aff. ¶ 52.)

A plaintiff asserting liability against an individual municipal policymaker must allege "facts to support their contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office." *Ying Jing Gan v. City of New York,* 996 F.2d at 536. Covington has failed to sufficiently allege facts from which the Court can infer that District Attorney Morgenthau failed to train his employees. Covington makes the circular argument that the behavior of the A.D.A. in this case constitutes circumstantial evidence of the existence of such a policy. However, it is well established that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 122 (2d Cir. 1991); *accord, e.g., Dwares v. City of New York,* 985 F.2d 94, 100–01 (2d Cir.1993); *McDonald v. Reid,* 87 Civ. 1684, 1991 WL 51055 at *3 (S.D.N.Y. April 4, 1991).

Moreover, conclusory allegations of misconduct are not sufficient evidence of municipal policy or custom. *E.g., Dwares v. City of*

*New York,* 985 F.2d at 100 (the "mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d at 124 ("What is a properly 'short and plain' pleading depends, of course, on the circumstances of the case and the nature of the claim, and our prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory."); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."); *DeDiego v. City of New Britain,* No. 3:93CV00391, 1994 WL 70280 at *2 (D.Conn. Jan. 31, 1994) ("the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."); *McDonald v. Reid,* 1991 WL 51055 at *3 ("unsubstantiated allegations do not meet the requisite showing of municipal policy or custom as is required under 42 U.S.C. § 1983").

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected a "'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability" under 42 U.S.C. § 1983. 507 U.S. at 163, 167, 113 S.Ct. at 1161, 1163. The Supreme Court, however, did not decide whether a heightened pleading standard could be applied in § 1983 suits against individual municipal officials. *Id.* at 166–67, 113 S.Ct. at 1162 ("We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials.").

*Brady* claim is not sufficiently pleaded, for the reasons discussed in text.

The post-*Leatherman* cases in this circuit continue to apply the "heightened pleading standard" to § 1983 claims against municipal employees. *See Payne v. Axelrod*, 871 F.Supp. 1551, 1556 n. 7 (N.D.N.Y.1995) (because *Leatherman* left issue open as to heightened pleading standard in § 1983 suits against individual defendants, applies prior Second Circuit decisions requiring additional proof for conspiracy claims); *DeDiego v. City of New Britain*, 1994 WL 70280 at *4 ("under the crack deliberately left open by Chief Justice Rehnquist in *Leatherman*, at the present time, the lower courts apparently may no longer impose 'heightened pleading standards' against municipalities facing § 1983 claims, but may still require such standards when asserting claims against individual government officials implementing municipal policy in their official capacity. Although undoubtedly incongruous, that same course is followed here."); *Orange v. County of Suffolk*, 830 F.Supp. 701, 707 (E.D.N.Y. 1993) (*Leatherman*, does not change rule that conspiracy charge against municipality and officers require more specific pleadings); *Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 393 (Bankr.S.D.N.Y.1993) (Second Circuit requirement that § 1983 complaints "contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions," is not inconsistent with *Leatherman* and Fed.R.Civ.P. 8(a)).

Since Covington has not asserted a single concrete fact from which the Court can conclude that District Attorney Morgenthau either had unconstitutional office policies or failed to adequately train his ADAs, Covington's failure to train claim is legally insufficient and should be dismissed. *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d at 536 (holding that plaintiff failed to allege facts supporting allegation that District Attorney promulgated policy regarding face to face identifications); *East Coast Novelty Co. v. City of New York*, 809 F.Supp. 285, 299–300 (S.D.N.Y.1992) (holding that plaintiff failed to allege facts supporting allegation that District Attorney created a policy as to unconstitutional search and seizure).

Finally, even if the Supreme Court ultimately were to hold that a heightened pleading standard cannot be required for claims against individual officials, Covington's failure to train claim still should be dismissed. Covington alleges that District Attorney Morgenthau failed to train his ADAs "not to prosecute without necessary probable cause," "not to prosecute ... innocent persons" and "not to commit or perform perjury, falsify inculpatory evidence or suppress exculpatory evidence." (Covington Aff. ¶ 52.) As the Second Circuit has held, where the "alleged misdeeds relate to such basic norms of human conduct—the duty not to lie or prosecute the innocent—[then] in the ordinary case a municipal policy maker need not expend precious resources on training or supervision but can instead rely on the common sense of her employees." *Walker v. City of New York*, 974 F.2d at 301. Covington's failure to train claim relates to "the duty not to lie or prosecute the innocent," and as such fails to state a viable "failure to train" claim without regard to any heightened pleading standard.[6]

## CONCLUSION

For the reasons set forth above, I recommend that the Court dismiss all claims against District Attorney Morgenthau and Assistant District Attorney Bienenfeld.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Shira

---

**6.** I therefore need not reach the District Attorney's argument (in its reply brief) that District Attorney Morgenthau is not responsible for policy making of the Special Narcotics Office, because New York Judiciary Law § 177–c provides that the District Attorney appoints a member of his staff to oversee the Special Narcotics unit. The statute, however, does not specify how much authority the District Attorney retains over the training and/or operation of the Special Narcotics Unit after such an appointment.

Scheindlin, 500 Pearl Street, Room 1050, and to the chambers of the undersigned, 40 Centre Street, Room 540. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

Dated: New York, New York
 November 8, 1995.