Amine **BABI–ALI**, Plaintiff,

v.

The **CITY OF NEW YORK,** et al., Defendants.

No. 92 CIV. 7957(DAB).

United States District Court, S.D. New York.

Oct. 21, 1997.

---

Paul A. Crotty, Corporation Counsel, New York, NY (Norma A. Cote, of counsel), for Defendants.

Bond, Schnoeneck & King, Albany, NY, for Plaintiff Amine Baba–Ali.

Michael William Harris, Harris & Panels, Syracuse, NY.

Peter Wessel, Law Office of Peter Wessel, New York, NY.

## ORDER

BATTS, District Judge.

Amine Baba–Ali, Plaintiff, brings this action against the City of New York, Nadine Haddad Sabbagh, M.D., and Elizabeth J. Loconsolo,[1] alleging the common law tort of

---

1. When Plaintiff brought this claim in October of 1992, prosecutors were not immune from liability for extra-judicial conspiracies to present perju-

ry. *See San Filippo v. U.S. Trust Co.*, 737 F.2d 246 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). Howev-

malicious prosecution and violations of Plaintiff' constitutional rights pursuant to 42 U.S.C. § 1983. Defendants move, pursuant to Rule 12(c) of the Fed.R.Civ.P., for partial judgment on the pleadings, or, in the alternative, to dismiss the Complaint pursuant to 12(b)(6) Fed.R.Civ.P. for failure to state a claim upon which relief can be granted. For the following reasons, Defendants' Motion for Judgment on the Pleadings is denied as to Plaintiff's § 1983 claim, and granted as to Plaintiff's pendant claim of malicious prosecution.

## I.  BACKGROUND

Plaintiff and his wife were involved in a bitter divorce and custody dispute. (Compl. ¶ 24), citing *People v. Baba–Ali*, 179 A.D.2d 725, 578 N.Y.S.2d 633 (1992). His wife was awarded temporary custody of their daughter and Plaintiff was awarded visitation privileges. (Compl. 24, Pl.'s Mem. In Opp'n at 1, Def.'s Mem. Law at 2). Plaintiff's wife moved from their marital residence in Queens into Manhattan and sent their daughter to live with her maternal grandparents in Pennsylvania. (Compl.¶ 24). Plaintiff had to seek enforcement of his visitation rights and his wife was threatened with sanctions if she did not comply with the visitation order. (Compl.¶ 24). As a result, Plaintiff's wife would drive to Pennsylvania after work on Fridays and, on Saturdays, would drive the child to Queens. (Compl.¶ 24). On Sunday evenings, the wife would pick up the child and meet the maternal grandparents at a designated location on the New Jersey Turnpike and, from this location, the grandparents would take the child back to their home in Pennsylvania. (Compl.¶ 24).

On February 12, 1988, after six of such weekend visits, the grandmother brought the child to her pediatrician, Dr. Dada, claiming that she suspected Plaintiff of child sexual abuse. (Compl.¶ 24). Dr. Dada examined the child, but his examination was inconclusive because he could not perform a comprehensive gynecological examination. (Compl.¶ 24). As a result, Dr. Dada contact-

ed the appropriate authorities and referred the child to Crozer–Chester Medical Center (Crozer) for further evaluation. (Compl.¶ 24). The medical records from Crozer indicated that the child's genitalia and rectum were normal and that the attending physician had attempted to insert a Q-tip into the child's vagina but the opening was too small. (Compl.¶ 24). A notation, "[n]o Signs of SA [sexual abuse]," was made on the record. (Compl.¶ 24).

Plaintiff's wife testified that she was dissatisfied with the examination her daughter received at Crozer and, on February, 15, 1988, she took her daughter to Children's Hospital of Philadelphia (CHOP). (Compl.¶ 24). Next to the boxes marked rectum and genitalia, the attending physician wrote "[n]o external signs of abuse." (Compl.¶ 24). The CHOP medical records indicated that the child had been examined for approximately an hour and a half. (Compl.¶ 24).

Plaintiff's last visitation with his daughter was on February 7, 1988. All three subsequent examinations were inconclusive or showed no physical evidence of sexual abuse. (Compl. ¶ 24, Pl.'s Mem. in Opp'n at 1–2, Def.'s Mem. Law at 2). Plaintiff's wife then contacted a New York police detective in the Queens Sex Crimes Squad, who referred the child for another medical examination. (Compl.¶ 24). On May 26, 1988, the child was examined by Dr. Nadine Sabbagh, an employee of the New York City Department of Health. (Compl. ¶ 24, Pl.'s Mem in Opp'n at 2, Def.'s Mem. Law at 2). In the three and a half months between the child's examination at CHOP and Dr. Sabbagh's examination, the child had not been taken to see any other physician. (Compl.¶ 24). In that three and a half month period, Plaintiff had no contact with his child. (Compl.¶ 24).

Dr. Sabbagh's diagnosis was of sexual abuse with multiple vaginal and anal penetrations. (Compl. ¶ 24, Pl.'s Mem. in Opp'n. at 2, Def.'s Mem. Law at 3). On June 28, 1988, Plaintiff was arrested and charged with sexual abuse of his daughter. (Compl. ¶ 24,

er, based on the Second Circuit's holding in *Dory v. Ryan,* 25 F.3d 81 (2d Cir.1994) prosecutors are now absolutely immune from liability for con-

spiring to present false testimony. Accordingly, Plaintiff's clams against A.D.A. Loconsolo individually are withdrawn.

Pl.'s Mem. in Opp'n at 3, Def.'s Mem.Law at 3). On July 28, 1988, Plaintiff was indicted by a grand jury for sexual felonies against the child, including rape and sodomy. (Compl. ¶ 19, Pl.'s Mem. in Opp'n at 4, Def.'s Mem. Law at 3). Dr. Sabbagh testified as an expert witness at trial and conveyed the findings of her diagnosis. (Compl.¶ 24). Specifically, Dr. Sabbagh testified that the sexual abuse occurred 12 to 18 weeks before her initial examination, (Compl.¶ 24) and that her examination revealed that the child had no hymen. (Compl.¶ 28). Plaintiff was convicted on all counts in December 1989, and sentenced to three concurrent indeterminate terms and three concurrent definite terms. (Compl.¶ 20).

In January of 1992, the Appellate Division for the Second Judicial Department of the State of New York ("Appellate Division") reversed Plaintiff's conviction, on the ground of prosecutorial misconduct (based on the People's withholding of CHOP records which contained potentially exculpatory evidence). (Compl. ¶ 22, Pl.'s Mem. in Opp'n at 4, Def. Mem.Law at 4). The Appellate Division also made a finding of ineffective assistance of defense counsel, citing as support the facts that the defense counsel had failed to subpoena the physicians who had performed the earlier examinations and also failed to secure independent expert medical testimony. (Compl.¶ 24).

Following the reversal, the Queens District Attorney's Office moved to amend the Appellate Division's finding of prosecutorial misconduct. (Compl.¶ 26). The Assistant District Attorney (A.D.A.) who prosecuted the case, Elizabeth J. Loconsolo, stated that she had given the CHOP and Crozer records to Plaintiff's counsel within a few days of receiving them, several months before trial. (Compl.¶ 26). Plaintiff alleges that A.D.A. Loconsolo's affirmation was perjurious and that the trial jacket, on which Loconsolo claims to have noted handing over the records, was falsified. (Compl. ¶ 26, Def.Mem. at 5). The Appellate Division denied the motion to amend. (Compl. ¶ 23, Pl.'s Mem. in Opp'n at 6, Def.Mem. at 5).

In May 1992, Plaintiff was facing re-trial and the Queens District Attorney's Office

had the child examined at the New York Hospital by another doctor, Philip Hyden, M.D. (Pl.'s Mem. in Opp'n at 6). Dr. Hyden found that Plaintiff's daughter did in fact have a hymen, contrary to Dr. Sabbagh's assertion in court in 1989. (Compl. ¶ 28, Pl.'s Mem. in Opp'n at 6, Def.Mem.Law at 3). Shortly thereafter, the District Attorney moved to dismiss the indictment against Plaintiff, and the motion was granted. (Compl. ¶ 28, Pl.'s Mem. in Opp'n at 6).

## II. DISCUSSION

### A. STANDARD OF REVIEW

The standard for granting a motion for judgment on the pleadings pursuant to Rule 12(c) of the Fed.R.Civ.P. is the same as that governing a motion to dismiss the complaint made pursuant to Rule 12(b)(6) Fed.R.Civ.P. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (citing *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987)); *Volberg v. Pataki*, 917 F.Supp. 909, 913 (S.D.N.Y.1996). "On a motion to dismiss under Rule 12(b)(6) the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted); *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The district court should grant "such a motion only if, after viewing the plaintiff's allegations in the this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief.'" *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119 (2d Cir.1991)).

### B. PLAINTIFF'S § 1983 CLAIM AGAINST THE CITY OF NEW YORK

Plaintiff alleges that Defendant, City of New York, was deliberately indifferent to his constitutional rights in failing ade-

quately to train, supervise, and discipline its prosecutors, doctors, police officers, and validators in matters involving alleged child sexual abuse and custody disputes. (Compl. ¶¶ 42, 46, 53 and 57). In order to prove deliberate indifference on the part of a municipality, Plaintiff must demonstrate that the violation of his constitutional rights resulted from a municipal custom or policy. *Covington v. City of New York,* 916 F.Supp., 282, 287 (S.D.N.Y.1996). Plaintiffs asserting liability against a supervisor under § 1983 need not show that the municipality had an explicitly stated rule or regulation. *Covington,* 916 F.Supp. at 287. Instead, an inference that such a policy existed can be drawn from plaintiff's "proffer of circumstantial evidence, such as evidence that the municipality ... so failed to train its employees as to display a deliberate indifference to the constitutional rights of those in the jurisdiction." *Id.*

The Second Circuit set out three requirements to establish a municipality's deliberate indifference to a citizen's constitutional rights for a failure to train of supervise. *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.) *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). First the Plaintiff must show that the policymaker knows "to a moral certainty that her employees will confront a given situation. Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Walker,* 974 F.2d at 297. Second, the Plaintiff must show "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* Finally, the Plaintiff must evidence that "the wrong choice by the city employee will frequently cause the depriva-

tion of a citizen's constitutional rights." *Id.* at 298 (citing *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)).

Defendants claim first that Plaintiff's § 1983 claim is insufficient under *Walker* "because it pleads malicious prosecution" rather than deliberate indifference. (Defs.' Mem.Law at 18). The Court does not agree. Plaintiff alleges deliberate indifference, not malicious prosecution, against four separate City organizations.[2] Plaintiff's Complaint also properly alleges deliberate indifference to his constitutional rights by specifically alleging the deprivation of his rights under the Fourth, Sixth, Eight and Fourteenth Amendments of the United States Constitution. (Compl.¶ 62). Thus, this Court finds that Plaintiff's § 1983 claim of deliberate indifference against the City of New York is sufficiently pled.

To demonstrate that Plaintiff's allegations meet the *Walker* requirements, however, Plaintiff must show that Defendant, the City of New York, knew that its employees would confront a given situation. *See Walker,* 974 F.2d at 297. In Plaintiff's Complaint, he alleges that the City of New York, by virtue of the Department of Health, the Queens District Attorney's Office, the New York City Police Department and the New York City Department of Social Services/Human Resources knew that its employees would confront allegations of child sexual abuse in custody disputes. (Compl.¶¶ 43–46, 47–53, 54–57, 58–63). Under the standard of review of a motion for judgment on the pleadings, this Court is obliged to accept Plaintiff's allegations as true. Accordingly, Plaintiff can demonstrate the first *Walker* requirement by alleging that the City of New York was aware that its employees would confront situ-

---

2. Plaintiff alleges that the City of New York was deliberately indifferent with respect to the New York Department of Health, in that the City of New York, by its Department of Health, knew of the need for screening, training, supervising, and disciplining its physicians in relation to child sex abuse cases; (Compl.¶¶ 43–46) deliberate indifference in relation to the Queens District Attorney's Office, with respect to the commission of perjury, the alteration of official records, and the identification and handling of exculpatory mate-

rials; (Compl.¶¶ 47–53) deliberate indifference on the part of the New York City Police Department with respect to the investigation and documentation of cases involving child abuse; (Compl.¶¶ 54–57) and deliberate indifference on the part of the New York City Department of Social Services/Human Resources with respect to the alleged conduct of its validators in assisting with the documentation of child abuse cases. (Compl.¶¶ 58–63).

ations involving allegations of child sexual abuse in contested custody cases.

Second, Plaintiff must demonstrate that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. *Walker*, 974 F.2d at 297. In the case at bar, Plaintiff alleges that the ·Department of Health and the Queens County District Attorney's Office had obligations to train and to supervise their employees not to commit perjury. (Compl.¶¶ 44, 48). In *Walker*, the plaintiff similarly alleged that the police department had an obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent. *Walker*, 974 F.2d at 299. The Second Circuit in *Walker* stated that "[w]here the proper response—to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Id.* at 299–300. However, the court further stated that "while it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Id.* at 300.

The Second Circuit in *Walker* found that plaintiff should be allowed to "pursue discovery in order to determine whether there was a practice of condoning perjury or a pattern of police misconduct sufficient to require the police department to train and supervise police officers to assure they tell the truth." *Id.* Moreover, the court held that a complete failure by the District Attorney in 1971 to train A.D.A.s on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to a § 1983 claim because the court did not think that "just seven years after *Brady* was decided, that the *Brady* standard was so obvious or easy to apply as to require, as a matter of law, no training or supervision." *Walker*, 974 F.2d at 300.

While Plaintiff raises his claim thirty-four years after the *Brady* decision, this Court finds that *Walker* still applies. Plaintiff alleges that the conduct of the Queens County District Attorney's Office indicates a history of mishandling *Brady* material. Plaintiff's Complaint alleges nine separate instances in which the Queens County District Attorney's Office has withheld exculpatory evidence from accused individuals, or from the grand jury, in violation of the prosecutor's duty to disclose under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Compl.¶ 49).

The second *Walker* requirement states that a plaintiff must show either "that a situation presents an employee with a difficult choice that training will make less difficult, or that there is a history of employees mishandling the situation." *Id.* at 298 (emphasis added). Plaintiff's allegations certainly indicate a history of mishandling situations involving *Brady* material. While the allegations may not replicate those made in *Walker*, Plaintiff's claims do rise to a deliberate indifference to a history of mishandling *Brady* material. As such, Plaintiff's allegations are sufficient to satisfy the second element of *Walker*.

As to Dr. Sabbagh, Plaintiff's Complaint alleges two other instances in which the doctor's examinations of children were contradicted by subsequent examinations. (Compl.¶ 45). Further, Plaintiff notes that Dr. Sabbagh has testified in over 600 other cases. (Compl.¶ 45). If allowed further discovery on the professional conduct of Dr. Sabbagh, Plaintiff may similarly be able to demonstrate that the City has failed to train Dr. Sabbagh appropriately to confront situations involving allegations of child sexual abuse in custody cases. Thus, this Court also finds that Plaintiff has successfully pled the second element of *Walker* as to Dr. Sabbagh.

The third *Walker* requirement demands that the plaintiff show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker*, 974 F.2d at 298. Plaintiff's Complaint alleges violations of his established rights under the Fourth, Sixth, Eight

and Fourteenth Amendments because of the wrong choices of the Queens County District Attorney's Office, the New York City Police Department, the Departments of Health and Social Services/Human Resources. (Compl.¶ 62). In the case at bar, Plaintiff alleges to have been "wrongly deprived of his liberty for approximately eight hundred and fifty days while confined to various correctional facilities where he was subjected to brutal and merciless beatings as well as pre-impact terror and constant intense fear of being attacked ... [and] was wrongfully deprived of his parental rights." (Compl.¶ 41). Taking the allegations in the light most favorable to the Plaintiff, it is clear that wrong choices of this nature will frequently cause the deprivation of a citizen's constitutional rights.

As it result, this Court finds that, for purposes of judgment on the pleadings or a failure to state a claim, Plaintiff can establish a § 1983 claim that the City of New York was deliberately indifferent.

## C. DEFENDANT'S CLAIMS OF IMMUNITY TO PLAINTIFF'S § 1983 CLAIM

■ Defendants' allege that Plaintiff has insufficiently pled his § 1983 claim (Def. Mem.Law at 17). In the alternative, Defendants claim that Dr. Sabbagh is protected from liability by qualified immunity. (Def. Mem.Law at 17). Government officials may enjoy a privilege of qualified immunity from liability for damages arising out of their discretionary official functions so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Phillips*, 81 F.3d 1204, 1211 (2d Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1244, 137 L.Ed.2d 326 (1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doe*, 81 F.3d at 1211 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). To determine whether a right was

clearly established at the time the defendant acted, a court should consider (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (internal citations omitted)).

Plaintiff alleges violations of rights conferred by the Fourth, Sixth, Eight and Fourteenth Amendments. (Compl.¶ 62). These rights are well established and well defined. If, as Plaintiff's Complaint alleges, Dr. Sabbagh was knowingly falsifying records and perjuring herself (Compl.¶¶ 42–46), it is hard for this Court to imagine how she could not have understood that her actions might implicate Plaintiff's constitutional rights.

Further, the right of qualified immunity does not protect those "who knowingly violate the law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1065 (2d Cir.1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). Plaintiff has alleged knowing falsification and perjury. (Compl.¶¶ 42–46). Accepting such allegations as true requires this Court to find that the defense of qualified immunity will not protect Dr. Sabbagh from liability.

As to the City of New York, a municipality can only be liable for a constitutional violation "where the municipality itself causes the constitutional violation at issue" by one of its policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiff has alleged deliberate indifference on the part of the City of New York and this Court finds that Plaintiff successfully states a claim on this ground. *See supra.* Because this Court must accept these allegations as true for the purposes of a motion on the pleadings, this Court finds that the municipality's deliberate indifference (as alleged) created the injuries suffered, and is subject to liability.

## D. PENDENT STATE LAW CLAIM OF MALICIOUS PROSECUTION

■ Plaintiff seeks to hold Dr. Nadine Sabbagh, M.D. and the City of New York liable for the common-law tort of malicious prosecution. To state a claim under New York law for malicious prosecution, the Plaintiff must demonstrate that: "(1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding terminating in the plaintiff's favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the defendant commenced the criminal proceeding out of malice." *Fowler v. Robinson*, 94 Civ. 836, 1996 WL 67994 (N.D.N.Y. Feb. 16, 1996) (citation omitted); *see also Whittaker v. Duke*, 473 F.Supp. 908 (S.D.N.Y.1979) (citing Prosser, Law of Torts 835 (4th Ed.1971)).

Defendant's argue that Plaintiff has failed to state a claim because malicious prosecution is not a constitutional tort. (Def.Mem.Law at 7). Under *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court foreclosed reliance on substantive due process under the Fourteenth Amendment as the basis for a malicious prosecution claim pursuant to § 1983. However, in the instant case, the Complaint and Plaintiff's Memorandum in Opposition make clear that Plaintiff's malicious prosecution claim sounds in state law, and is set forth in the Complaint as a pendent claim to Plaintiff's federal civil rights claim against the City of New York.

■ Defendants also argue that Plaintiff cannot hold Dr. Sabbagh liable because she did not initiate the prosecution against Plaintiff. Generally, one who "merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a prosecution." *Whittaker*, 473 F.Supp. at 909. However, if "it is found that [the defendant's] persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be liable." *Id.* at 911 (citing Prosser, Law of Torts, 836–837 (4th Ed.1971)).

Plaintiff alleges that Dr. Sabbagh knowingly gave false testimony. (Compl. at ¶ 24).

The New York Court of Appeals held that an eyewitness to an attempted robbery, who identified a suspect and confirmed her identification, could not be held liable under the tort of malicious prosecution because she had "played no part in plaintiff's arrest or imprisonment other than to provide information to the legal authorities identifying plaintiff as the perpetrator of the crime." *Collins v. Brown*, 129 A.D.2d 902, 514 N.Y.S.2d 538, 540 (1987). The plaintiff in *Collins* was unable to succeed because he could not establish that his indictment was produced by fraud, perjury, the suppression of evidence or other conduct undertaken in bad faith. *Collins*, 514 N.Y.S.2d at 540 (citing *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 456, 455 N.E.2d 1248, 1251 (1983); *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740 (1979)).

Plaintiff alleges that the indictment was produced by the perjurious testimony of Dr. Sabbagh. (Compl.¶ 24). Under the 12(c) standard of review, this Court is obligated to accept Plaintiff's allegations as true. Accordingly, this Court finds that, as to Dr. Sabbagh, Plaintiff has successfully stated the first element of malicious prosecution.

■ The first element of Plaintiff's allegation against the City is more easily met as the City was clearly responsible for initiating the criminal prosecution through the Queens County District Attorney's Office and the New York City Police Department. Thus, as to Defendant New York City, Plaintiff has sufficiently stated the first element of a claim of malicious prosecution.

The second element of a claim of malicious prosecution requires the Plaintiff to demonstrate that the proceeding was terminated in his favor. The Appellate Division in *People v. Baba–Ali* reversed Plaintiff's conviction on the grounds of prosecutorial misconduct and ineffective assistance of counsel. *People v. Amine Baba–Ali*, 179 A.D.2d 725, 578 N.Y.S.2d 633 (1992). Accordingly, Plaintiff's allegations meet the second element of malicious prosecution.

■ The third malicious prosecution element requires Plaintiff to demonstrate

that at the time of his arrest, there was an absence of probable cause. *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983) (citing *Martin v. City of Albany,* 42 N.Y.2d 13, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977); *Broughton v. State of New York,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, *cert. denied sub. nom. Schanbarger v. Kellogg,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)). Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstance to believe plaintiff guilty. *Colon,* 468 N.Y.S.2d at 455, 455 N.E.2d at 1250 (citations omitted). However, once a suspect has been indicted, the law holds that the Grand Jury action creates a presumption of probable cause. *Id.* (citing *Lee v. City of Mount Vernon,* 49 N.Y.2d 1041, 429 N.Y.S.2d 557, 407 N.E.2d 404 (1980)). This rule is founded upon "the premise that the Grand Jury acts judicially and it may be presumed that it has acted regularly. The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Colon,* 468 N.Y.S.2d at 456, 455 N.E.2d at 1251. The court in *Colon* further noted that the rule in New York differs from other jurisdictions which "permit the presumption to be overcome by any evidence tending to show the absence of probable cause." *Id.* In New York, the "trial court may not weigh the evidence upon which the police acted or which was before the Grand Jury after an indictment has been issued. If Plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.*

Plaintiff's allegations implicate the City of New York and Dr. Sabbagh for perjury. (Compl. ¶¶ 44–65). Accepting these allegations as true, it is clear that Plaintiff has established the third element of a malicious prosecution claim.

As to the fourth element of a malicious prosecution claim, Plaintiff must show that the defendant commenced or continued the criminal prosecution for an improper motive, or with malice, rather than see "the ends of justice served." *Fowler v. Robinson,* 94 Civ. 836, 1996 WL 67994, *8 (N.D.N.Y. Feb.15, 1996) (citation omitted). There is a "close relationship under New York law as to the lack of probable cause and actual malice, the fourth element of a malicious prosecution claim." *Post v. Elser,* 92 Civ. 1146, 1996 WL 406843,*8 (N.D.N.Y. July 19, 1996) Thus, actual malice can be inferred from a lack of probable cause for the initiation of criminal proceedings. *Fowler,* 1996 WL 67994 at *8. Because Plaintiff has stated a lack of probable cause, an inference can be drawn under New York law that the prosecution was initiated with actual malice. Thus, this Court finds that Plaintiff has stated a claim upon which relief can be granted.

## E. DEFENDANTS' CLAIMS OF IMMUNITY TO PLAINTIFF'S MALICIOUS

### PROSECUTION CLAIM

Whether an action of a governmental employee or official is "cloaked with any governmental immunity requires an analysis of the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion and judgment." *Mon v. City of New York,* 78 N.Y.2d 309, 574 N.Y.S.2d 529, 531, 579 N.E.2d 689, 691 (1991) (citing *Arteaga v. State of New York,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (1988); *Tarter v. State of New York,* 68 N.Y.2d 511, 510 N.Y.S.2d 528, 503 N.E.2d 84 (1986)). Generally, if the functions and duties at issue are essentially "clerical or routine, no immunity will attach." *Mon,* 574 N.Y.S.2d at 532, 579 N.E.2d at 691. When "official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant is generally not answerable in damages for the injurious consequences of that action." *Id.* (citing *Haddock v. City of New York,* 75 N.Y.2d 478, 554 N.Y.S.2d 439, 440, 553 N.E.2d 987, 988 (1990)). This general rule reflects "a value

judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability from that injury." *Id.* (citing *Haddock*, 554 N.Y.S.2d at 440, 553 N.E.2d at 988.)

However, not all discretionary actions are afforded absolute immunity. *Arteaga v. State of New York*, 72 N.Y.2d 212, 532 N.Y.S.2d 57, 59, 527 N.E.2d 1194, 1195–96 (1988). Whether an action receives qualified or absolute immunity requires an analysis of the functions and the duties of the particular governmental officer of employee whose conduct is at issue. *Arteaga*, 532 N.Y.S.2d at 59, 527 N.E.2d at 1195–96. The focus of such analysis is on the scope of the "delegated discretion and whether the position entails making decisions of a judicial nature—i.e., decisions requiring the application of governing rules to particular facts, and exercise of reasoned judgment which could typically produce different acceptable results." *Id.* (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 471 N.Y.S.2d 73, 77, 459 N.E.2d 182, 186 (1983)). "If a functional analysis of the actor's position shows that it is sufficiently discretionary in nature to warrant immunity, it must then be determined whether the conduct giving rise to the claim is related to an exercise of that discretion." *Mon*, 574 N.Y.S.2d at 532, 579 N.E.2d at 692.

In *Tango v. Tulevech*, 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983), parents brought a negligence claim against the supervising probation officer and her employer, the County of Rockland, alleging careless and wrongful violation of her civil rights. The County of Rockland claimed absolute immunity for the supervisor's conduct as a government employee. *Tango*, 471 N.Y.S.2d at 74, 459 N.E.2d at 183. The case involved a custody dispute in which the father had legal custody of the children and the children's mother removed the two girls from their school bus and attempted to take them with her to South Carolina. *Id.* at 75, 459 N.E.2d at 184. The school principal observed the incident and enabled the police to intercept the mother. The mother and her children were taken to the In-take Unit of the Probation Department connected with the Rockland County Family Court. *Id.* At the In-take Unit both parents claimed legal custody of the children. *Id.* at 77, 459 N.E.2d at 186. The supervisor examined the children for signs of abuse and exercised her judgment as to whether court action was appropriate. *Id.*

The Court found that the supervisor was correct in her appraisal the situation. *Id.* Further, the Court held that even if the supervisor were incorrect, she was immune from suit, because her actions were related to an exercise of her discretion. *Id.* Given the discretionary nature of her acts, the court found that the question of bad faith or malice irrelevant. *Id.*

Plaintiff, in the case at bar, alleges that Dr. Sabbagh's tortious conduct consisted of "performance of a physical examination, commencement or continuation of a criminal prosecution against plaintiff and perjury." (Pl.'s Mem. in Opp'n. at 20). Plaintiff's Complaint indicates that Dr. Sabbagh performed a physical examination of the child. Plaintiff's Complaint details Dr. Sabbagh's findings that the child suffered multiple vaginal and anal penetrations. (Compl.¶ 24). Further, Dr. Sabbagh testified that she had no trouble performing the Q–Tip test and, further, that the child's vagina was abnormally large and her anal muscles abnormally weak, indicating that repeated vaginal and anal penetrations had occurred. (Compl.¶ 24). Dr. Sabbagh also testified that the child's anal area was discolored and had been bruised. (Compl.¶ 24). Finally, the Doctor testified that she believed that the sexual abuse had occurred approximately 12 to 18 weeks prior to her examination, plus or minus 4 to 6 weeks (Compl.¶ 24).

Like the supervisor in *Tango*, Dr. Sabbagh made a decision based upon her interpretation of the facts as presented. To make this determination, Dr. Sabbagh exercised her medical discretion. The conduct that gives rise to Plaintiff's malicious prosecution claim is, in fact, Dr. Sabbagh's medical discretion. Even if in error or in malicious bad faith, Dr. Sabbagh acted within the scope of her discretion as a medical examin-

er. This Court cannot construe Dr. Sabbagh's conduct as that which did not involve her exercise of her discretion, or as clerical, routine or ministerial. *See Mon,* 574 N.Y.S.2d at 532, 579 N.E.2d at 691. As such, Dr. Sabbagh's conduct, however egregious, falls under the umbrella of absolute immunity in which reasonableness and bad faith are irrelevant. *Arteaga v. State of New York,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 59, 527 N.E.2d 1194, 1196 (1988).

While this Court finds that Plaintiff has successfully pled a malicious prosecution claim, this Court also finds that Dr. Sabbagh, in her discretionary functions, is shielded by absolute immunity. As such, this Court finds that the City of New York and Dr. Sabbagh established absolute immunity as to Plaintiff's claim of malicious prosecution. Accordingly, Defendants' motion to dismiss Plaintiff's malicious prosecution claim is granted.

### III. CONCLUSION

Based upon the foregoing reasons, this Court denies Defendants' motion on the pleading as to Plaintiff's § 1983 claim. However, in light of the Defendants' absolute immunity, this Court grants Defendants' motion on the pleadings as to Plaintiff's pendant claim of malicious prosecution.

SO ORDERED.